## Loeffler v. City Of Louisville.

November 30, 1948.

Woodward, Dawson, Hobson & Fulton for appellant.

Gilbert Burnett and Lawrence G. Duncan for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

We will quote the facts and statement of the issue involved from appellant's brief.

"By ordinance 53, series 1946, which was approved by the Mayor on April 25, 1946, the City of Louisville sought to annex certain adjacent property southeast of the present boundary and lying roughly between Newburg road and Bardstown road. More than seventy five per cent (75%) of the resident free holders of the territory sought to be annexed remonstrated against the annexation and this suit was filed by the appellant seeking to prevent the annexation.

"The City's answer merely denied the material allegations of the petition. On the trial the jury found for the defendant and judgment was entered dismissing the petition. It is from that judgment that this appeal is taken.

"KRS 81.110(1) provides for proceedings such as were instituted by appellant in this case, and KRS 81.-110(2) provides, in its material part:

" 'If the jury finds that seventy-five per cent or more of the resident free holders of the territory sought to be annexed or stricken off have remonstrated, the annexation or reduction shall not take place, unless the jury finds from the evidence that a failure to annex or strike off will materially retard the prosperity of the city, and of the owners and inhabitants of the territory sought to be annexed or stricken off, in which case the annexation or reduction shall take place notwithstanding the remonstrants.' " Under the quoted provision of this statute, the Court properly instructed the jury that seventy five per cent (75%) or more resident free holders of the territory sought to be annexed remonstrated, and directed the jury to find for the appellant unless they believe from the evidence a failure to annex the territory will materially retard the prosperity of the City and of the owners and inhabitants of the territory sought to be annexed.

Appellant admits the evidence is sufficient to support the finding of the jury that the prosperity of the City of Louisville would be retarded materially by failure to annex. But he confidently asserts that there is no testimony in the record to support the finding that the prosperity of the owners and inhabitants of the territory sought to be annexed would materially, or in any way, be retarded by failure to annex. Thus we are asked to

declare that the evidence adduced on the trial fails, as a matter of law, to support the finding of the jury on this aspect of the case.

It was shown by the evidence that the territory in question now is receiving adequate electric, gas, and telephone services. The roads throughout the territory are in good condition and adequate for vehicle travel. Sewage disposal is adequate, although rentals for the service exceed by fifty per centum the cost of like service to the citizens of Louisville. At the present time water is being furnished to the territory *by the City* in adequate amounts, but this service like the sewer service costs the users of water fifty per centum (50%) more than it would if the territory should be annexed, and the source of water supply upon which use of sewers depends is merely temporary, as hereinafter will be pointed out. Appellant introduced testimony to the effect that the territory enjoys adequate police and fire protection, but the proof on these points falls short of being conclusive of the ultimate facts in support of which it was introduced. The strongest evidence in support of appellant's contention is that annexation to the City will increase the hazard of travel encountered by children going to and returning from school.

We will not lengthen this opinion by referring to the evidence in respect to conveniences and services to the owners and inhabitants of property in the territory sought to be annexed, where annexation will not affect the situation one way or another. We will confine our remarks to the contentions in support of appellant's theory that the prosperity of such owners and inhabitants would be retarded and weigh them against the factors which will increase the prosperity of such owners and inhabitants in an endeavor to determine whether there was any substantial evidentiary basis for the jury's determination that failure to annex would materially retard.

To retard prosperity means to delay progress. Webster's New International Dictionary. The prosperity of a community must be gauged by its attainments in the many fields affecting the welfare of its inhabitants and the owners of property comprising its territorial limits. Thus economic, religious, social, educational, safe-

ty, and sanitary conditions are factors to be taken into consideration in determining the prosperity of a community as a whole. There is no evidence in this case which suggests that the prosperity of the territory under consideration will be retarded economically, religiously, socially, or educationally by being annexed to the City. The main argument is that its inhabitants now are receiving conveniences and services tantamount to those they would receive were it annexed to the city. We hardly see how their prosperity would be retarded by annexation if it should be conceded that they now are receiving all of the advantages enjoyed by residents and free holders of the city itself. But there is one factor in respect to the personal enjoyment of the inhabitants and free holders of the territory proposed to be annexed which, when weighed, unbalances the scales and weighs heavily in favor of annexation, that factor is: that water is furnished the inhabitants of the territory by the Louisville Water Company, owned and operated by the City of Louisville. Nothing in its charter or in the statutes forbids the City to furnish water to outlying territory, but it is likewise true that there is nothing contained in the charter or in the statutes which compels the City to furnish water to outlying territory or to continue such service once it has been established. It is a matter of common knowledge that the City of Louisville is endeavoring to annex many communities such as the one under consideration in this case. Should it be successful in these endeavors, and so far it reasonably has been, the City of Louisville may be compelled to serve inhabitants of annexed territory, and such compulsory service may require a discontinuance of the conveniences afforded now by sufferance on the part of the City. Or, should the City elect, it may discontinue serving this territory with water. Thus appellant and those similarly situated would be deprived of the use of water in their homes, businesses, protection from fire, and in making use of the sewers which would be rendered functionless without water supply. Whilst the witnesses for appellant testified that police protection is adequate, their conclusion in this respect is based on the fact that police cars patrol the territory, but it was shown that a part of such patrolling is being performed by members of the City Police Department who traverse the territory in patrolling

city streets partially surrounding the territory proposed to be annexed. Thus it will be seen that the present ideal condition in respect to sanitary conditions is, and until annexed to the City will remain to be, insecure and in all likelihood will be discontinued as legal demands for like services to annexed territory will deplete the water supply now available to outlying territories. Thus the community would have to find other means to reinstate it to its present condition of prosperity in this respect, which necessarily will slow its progress, consequently retard its prosperity. Police protection, especially patrolling, is hampered by the lack of street lights which necessarily will be installed in the event of annexation. The territory in question enjoys protection from fire by reason of the fact that the Louisville Fire Department, at its own expense, serves the territory. At least the fire department serves as best it can with only six fire hydrants in the territory. The property owners enjoy a reduced rate by reason of this service, but, if taken into the City the fire rate will be reduced materially from that in effect at the present time. The argument that school children will encounter greater hazards from traffic conditions if taken into the City is a factor which reasonably may be calculated to affect adversely the prosperity of the community, because children now are being taken to county schools free of charge on busses furnished by the school board of the county; whereas, if taken into the City, this service would cease and the children either would have to walk, ride public conveyances, or be conveyed to their schools by private means. If by reason of annexation these changes develop a real hazard to the safety of (not inconvenience to) the children, the City no doubt will, as the evidence discloses it has in other parts of the City, furnish a method of transportation free of any increased hazard and perhaps at no cost to the children. All in all, we think the evidence discloses beyond doubt that the prosperity of the territory will be retarded if not annexed to the City, because many conveniences and necessities not required to be, but which now are, provided by the City of Louisville under its good neighbor policy will, upon annexation, become secure to the inhabitants and freeholders of the annexed territory for all time to come.

The judgment is affirmed.