MAYOR, COUNCILMEN AND CITIZENS OF the CITY OF LIBERTY, a Municipal Corporation, Plaintiff-Respondent,

v.

DEALERS TRANSPORT COMPANY, a Corporation, Defendant,

and

Kansas City, Missouri, a Municipal Corporation, Defendant-Appellant.

No. 22986.

Kansas City Court of Appeals.

Missouri.

Oct. 5, 1959.

Benj. M. Powers, City Counselor, John J. Cosgrove, Assoc. City Counselor, Robert A. Meyers, Asst. City Counselor, Kansas City, for appellant.

William E. Turnage, Liberty, for respondent.

HUNTER, Judge.

This is an appeal by the City of Kansas City from a judgment of the Circuit Court of Clay County to the effect that the City of Liberty has satisfied all the requirements of the Sawyers Act[1] and may proceed in its steps to annex certain land in Clay County owned by defendant Dealers Transport Company over which Kansas City claims priority to annex.

On September 15, 1958, in accordance with the provisions of the Sawyers Act, Liberty filed its petition for a declaratory judgment alleging, among other things, that (1) on September 5, 1958, it passed a resolution to annex the land in question; (2) that such annexation of this contingent land is reasonable and necessary to the proper development of Liberty; (3) that Liberty is presently providing water service and upon annexation will immediately provide its normal municipal services to that area, and that (4) "plaintiff is informed that (Kansas City) has some claim to the area above described, the precise nature of which is unknown to plaintiff * * *. Wherefore, plaintiff prays the court to make its order authorizing plaintiff to annex the within described territory, and declaring that the City of Kansas City, Missouri, has no right to annex such territory."

In its second amended answer filed on November 3, 1958, Kansas City alleged that on April 6, 1956, it had caused to be introduced in its City Council an ordinance, proposing to submit to the electors of Kansas City an amendment to its City Charter "by annexing certain territory in Clay County, Missouri, effective January 1, 1961; that included in said territory was the area described in plaintiff's petition."

As its explanation as to why this ordinance thereafter had not been the subject of any councilmatic action:

"Defendant further states that the proposition contained in said ordinance has not yet been submitted to the electorate for a vote thereon for the reasons:

"1. That Kansas City has a master plan for proposed annexation to territory in

1. Section 71.015 RSMo V.A.M.S.

Jackson, Clay and Platte Counties; that in pursuance of said plan studies and surveys are being constantly made to determine what areas, if any, in said counties would be adaptable to annexation, and to determine the character and extent of municipal services that said areas might require. That in preparing said plans and surveys, the City has spent, and is continuing to spend, large sums of money and is devoting the time and services of numerous expert employees for the reason that according to the standards for scientific planning, wise budgeting and economical expenditure of money, areas adaptable to urbanization may be annexed in orderly fashion from time to time as the need therefor becomes apparent.

"2. That in pursuance of said plan, Kansas City submitted, and the people adopted, ordinances annexing three areas— two in Jackson County, effective January 1, 1957, and January 1, 1958, and one in Clay County, effective January 1, 1959. That *when the last of said annexations are completed in January 1, 1959, additional studies and surveys will be made for* proposed annexation in Platte County January 1, 1960, and one in Jackson County on January 1, 1960, as well as *the annexation proposed by Ordinance 20190* in Clay County effective January 1, 1961. That as these studies are completed and the facts therefrom bearing upon the adaptability of said areas for urbanization are ascertained, the ordinances proposing the annexing of same will be submitted to a vote of the people within the time prescribed by law.

"Defendant further states that since the area described in plaintiff's petition was included in the total area proposed to be annexed by Ordinance 20190, the defendant Kansas City has an exclusive prior claim to the area sought to be annexed by plaintiff, and that until the proposition to annex the same has been rejected by a vote of the people of Kansas City, the plaintiff city has no right to annex the same.

"Wherefore, having fully answered, defendant prays for judgment against the plaintiff dismissing its petition with prejudice." (Italics ours.)

Liberty filed a motion for judgment on the pleadings.

On December 17, 1958, the case was tried. Defendant Dealers Transport Company failed to file any pleading in the cause and defaulted. The City of Kansas City did not appear at the trial in which the City of Liberty adduced evidence satisfying the requirements of the Sawyers Act.

The trial court found that the proposed annexation by Liberty was reasonable and necessary to the proper development of Liberty, and that Liberty was able to furnish normal municipal services within a reasonable time. It sustained Liberty's motion for judgment on the pleadings against Kansas City, and held that Liberty was "authorized (to proceed) to annex" the area in question.

On this appeal Kansas City's sole contention in asking that the trial court be reversed is that when it introduced its ordinance to annex on April 6, 1956, it acquired a prior right to annex the area which right it has not abandoned. To this respondent replies (1) that Kansas City may not successfully base a claim of prior jurisdiction on its introduced ordinance, and (2) has waived, abandoned, or relinquished whatever priority it might otherwise have obtained. It urges that Kansas City by its own admission does not even plan to make certain additional studies and surveys bearing upon the feasibility of the proposed annexation preliminary to any further action it may take towards annexing the area until after January 1, 1959.

In proceeding to annex land Kansas City is not governed by the Sawyers Act. McConnell v. City of Kansas City, Mo.Sup., 282 S.W.2d 518. According to the Charter of Kansas City it may annex land only by amending its charter. Article 1, sec. 5, Charter of Kansas City. Such amendment requires the favorable vote of the people after the passage of an ordinance sub-

mitting the question to the people. Article VI, sec. 20, Constitution of Missouri, 1945 V.A.M.S. The first step in the passage of an ordinance by the City is its introduction. Article II, sec. 14, Charter of Kansas City.

Liberty, however, in proceeding to annex land concededly is subject to the provisions of the Sawyers Act. By its terms Liberty is required, first, to adopt a resolution to annex; second, to file a declaratory judgment action in the circuit court seeking authorization to annex, and after proper showing, to obtain such judgment. Its final step thereafter, according to its brief, is the passage of an annexation ordinance. See Sec. 81.080 RSMo, V.A.M.S., and Laws of Mo. 1860–61, page 209 ff.

According to the undisputed facts both Kansas City and Liberty have taken the first step to annex the same small tract of land owned by Dealers Transport Company.

Kansas City took its first step on April 6, 1956, when one of its city councilmen introduced in its City Council an ordinance to annex a large tract of land including the small tract in question. It concedes that no action of any kind has been taken with regard to that ordinance. Its counsel in oral argument freely admits this proposed ordinance has not even been referred to an appropriate council committee as is the customary practice.

Liberty took its first step some two years and five months' later when on September 5, 1958, it introduced its resolution to annex the tract. After passing that resolution it took its second step by filing an action for a declaratory judgment and, upon proof, by securing the judgment in question authorizing it to proceed to annex.

Counsel for both Kansas City and Liberty agree that there exists in this state, and elsewhere, what is popularly referred to as "the prior jurisdiction doctrine." This doctrine has resulted from the sound recognition that there cannot be two municipal corporations with co-extensive powers of government extending over the same area. The resulting and settled rule is that where two public bodies such as a municipal corporation or school district each claim jurisdiction over the same territory by virtue of *completed* consolidation proceedings or by *completed* annexation proceedings, the one which takes the first valid step to establish the consolidation or annexation has the superior claim regardless of which one completes its proceedings first. State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762; State ex inf. Goodman ex rel. Crewdson v. Smith, 331 Mo. 211, 53 S.W.2d 271; Walker Reorganized School District R–4 v. Flint, Mo.App., 303 S.W.2d 200. We have italicized the word "completed" because in all of the Missouri cases applying the prior jurisdiction doctrine that have come to our attention through counsel and our own research *the contending public bodies had completed all of their steps to annex* and were seeking a determination as to which one had the superior claim thereto.

Kansas City, in this case, urges that the doctrine be expanded to mean that whichever public body takes the first step to annex, as by introducing in its city council a proposed annexing ordinance, be held to have not merely the superior claim and right to the area if it properly completes all of its steps to annex but also as soon as it has taken that first step has the right to invoke the prior jurisdiction doctrine so as to prevent any other municipality from endeavoring to annex the same area. It is unable to call to our attention any case that on its facts has carried the prior jurisdiction doctrine that far.

The only case in this state that presents a somewhat similar situation is that of State ex rel. Industrial Properties, Inc. v. Weinstein, 306 S.W.2d 634. There, the St. Louis Court of Appeals in a well-reasoned opinion held that where each of three competing municipalities was seeking a judicial decla-

ration that it met the statutory requirements established by the Sawyers Act as a condition precedent to annexation and was authorized to proceed to annex the territory but none of the three had reached the point where it was attempting to or had any right to exercise jurisdiction or control over the unincorporated area in dispute the prior jurisdiction doctrine was inapplicable, and, accordingly refused to abate the subsequent action. Doubtless, the St. Louis Court of Appeals had in mind that it was quite speculative as to whether or not the competing municipalities would complete all of the steps necessary to the annexation in that they might fail to satisfy one or more of the requirements of the Sawyers Act; or, might fail to obtain the favorable action thereafter required for annexation. Counsel for appellant would limit that decision to situations involving contending municipalities all of whom *were subject to the Sawyers Act. As we read that opinion the reasons given do not appear that restricted.

In the case before us other considerations come to mind. Should any city be permitted by the act of a single councilman in introducing an annexing ordinance, without more, to tie up however large an area he elected to describe so as to prevent all other municipalities from taking any action toward annexing that area or any part of it until such time as that city either annexes the land or abandons or defeats its annexation proceeding? The area described, so long as the ordinance is simply introduced, might not describe an area that is reasonable to annex, although that is an ultimate test it must meet. State ex inf. Taylor ex rel. Kansas City v. North Kansas City, supra. It could be bounded only by the councilman's imagination who drew it. Nor would the area have to be contiguous, which it must be when finally adopted. The ordinance could be amended without losing such priority. State ex inf. Taylor ex rel. Kansas City v. North Kansas City, supra. The courts would be engaged in determining rights when it is still speculative as to whether or not either municipality would

properly complete all steps required to annex. In so saying we do not intend to minimize the desirability of deciding conflicting claims of the nature before us as early as legal soundness permits in order to give certainty to the inhabitants of the area and other interested persons.

To all this Kansas City in its brief makes the following candid statement: "While we have found no decision ruling the point, it is doubtless the law that a city, having initiated annexation proceedings, may not sit idly by for a long period of time and by a 'dog in the manger policy' deny other cities the right to annex territory." With this we agree. We have located some supporting authority. In I Yokley, Municipal Corporations, Sec. 29, page 58, it is stated: "Where proceedings for the incorporation of a village are begun at about the same time as proceedings to annex the same territory to an existing city, the general rule is that the proceedings first instituted have preference, as has been previously stated. This rule, however, is conditioned by certain other rules, among which is the rule that the proceeding first instituted must be proceeded with in a reasonable time. In the absence of legislation fixing a maximum time for the completion of annexation proceedings, such proceedings, once commenced, must be conducted and completed within a time that is reasonable in view of all the circumstances of the particular case. Where an annexation proceeding is unreasonably delayed, the prolonged pendency of such proceedings will constitute no bar to incorporation proceedings involving the same territory." In the case of In re Incorporation of Village of Brown Deer, 267 Wis. 481, 66 N.W.2d 333, 335, it was expressed: " * * * Annexation proceedings must be conducted with reasonable dispatch and completed within a reasonable time. In the absence of legislation fixing a maximum time for the completion of annexation proceedings we cannot fix an arbitrary time therefor, or we would be legislating. We can and do say, however, that annexation proceedings once commenced must be con-

ducted and completed within a time that is reasonable in view of all the circumstances." See, also, Village of Brown Deer v. City of Milwaukee, 274 Wis. 50, 79 N.W. 2d 340, 347.

In order to dispose of the case before us it is not necessary to proceed as far as did the St. Louis Court of Appeals in the Weinstein case. Certainly in view of what we deem to be an unreasonably long delay under all the circumstances to proceed with the annexation steps Kansas City cannot now successfully contend that it is entitled to have the doctrine of prior jurisdiction applied so as to prevent Liberty from proceeding to annex the area in question. We do not reach the question of whether or not under circumstances involving no unreasonable delay a municipality first commencing an annexation proceeding would be entitled to have the doctrine applied so as to either cause the dismissal of or to stay for a reasonable time a proceeding later commenced by another municipality in order to permit the first one to complete its annexation proceedings.

Nor do we decide what the respective rights of Liberty and Kansas City over the area in question might be in the speculative event that both complete their annexation proceedings.

As of September 5, 1958, when Liberty began its annexation proceeding appellant had permitted two years and five months' time to pass without any action on its proposed ordinance. While the record is silent on the subject we gather from the oral argument in June, 1959, appellant still had not taken any action toward the councilmatic consideration and passage of that ordinance. If appellant believes that delay plus the additional time it may take to consider and pass the ordinance and to successfully hold the election required thereafter and the other facts then appearing do not deprive it of its claimed right to annex the mentioned tract it may seek to present that question for judicial consideration. As stated, we have not undertaken to pass on it.

The trial court ruled properly that Liberty had satisfied all the requirements of the Sawyers Act and was entitled to proceed with its annexation proceeding. Its judgment is affirmed. It is so ordered.

All concur.

